UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

OTIS WILLIAM O'QUIN, ET AL.                          CIVIL ACTION

VERSUS

SID J. GAUTREAUX, III, ET AL.                        NO. 14-98-BAJ-SCR

### RULING AND ORDER

Before the Court is a **Motion to Dismiss (Doc. 15)** filed by Defendants Sid J. Gautreaux, III, Sheriff of East Baton Rouge Parish; Lieutenant Colonel Dennis Grimes, Warden of the East Baton Rouge Parish Prison; Corporal Matthew Shumate; Corporal Grant; Lieutenant D. Barrick; and Lieutenant LaMotte, (collectively referred to as "Defendants"). Defendants are seeking an order to dismiss Otis William O'Quin's and Sharon Balser's ("Plantiffs") wrongful death and survival action. Plaintiffs oppose Defendants' Motion to Dismiss. (Doc. 24). The Court granted Defendants leave to file a reply to Plaintiffs' opposition. (Doc. 32). Oral argument is not necessary. Jurisdiction is proper pursuant to 28 U.S.C. § 1331. For the reasons stated below, Defendants' **Motion to Dismiss (Doc. 15)** is and **DENIED**.

## I.   BACKGROUND

### A.   Plaintiffs' Allegations

Plaintiffs' son, David O'Quin ("O'Quin") was diagnosed with bipolar disorder, schizo-affective disorder, and paranoid schizophrenia. (Doc. 6 at ¶ 10). Plaintiffs

1

allege that on February 13, 2013, O'Quin, was arrested for disturbing the peace and jailed in East Baton Rouge Parish Prison. (Doc. 6 at ¶¶ 15, 46). Plaintiffs aver that O'Quin's father, William O'Quin, notified the Baton Rouge Police Department and East Baton Rouge Parish Prison regarding O'Quin's illness and need for medication, but that Defendants still failed to provide O'Quin with adequate medical treatment during his incarceration. (Doc. 6 at ¶ 64). Plaintiffs further allege that O'Quin was beaten and extensively restrained during his time in jail, causing him to develop a bacterial infection that seeped into his wounds and ultimately killed him. (Doc. 6 at ¶¶ 22, 41, 45 & 63). Plaintiffs have filed claims under 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act,[1] and Louisiana state tort law.

### B. Procedural History

Plaintiffs filed this action on February 13, 2014 (Doc. 1), and filed their Second Amended Complaint ("Complaint") on February 26, 2014 (Doc. 6). Defendants filed the instant motion to dismiss on April 28, 2014. (Doc. 15). Plaintiffs filed their opposition to the motion on June 9, 2014. (Doc. 24). After being granted leave by the Court, Defendants filed a reply on January 26, 2015. (Doc. 32).[2]

---

[1] In the Complaint, Plaintiffs briefly state a claim under the Rehabilitation Act, in addition to the ADA. (Doc. 6 at ¶ 90). However, neither Defendants nor Plaintiffs refute or support the claim in any subsequent documents. As such, the Court requires additional information regarding the parties' positions on this claim and defers judgment at this time.

[2] Plaintiffs have also filed against additional defendants. Upon Plaintiffs' motion, this Court dismissed defendants Dr. Robert Blanche and Prison Medical Services from this action on May 23, 2014. (Doc. 22). Defendants Heather Anderson, Baton Rouge Police Department, and East Baton Rouge Parish City Government filed an Answer to the Complaint on August 14, 2014. (Doc. 30).

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Federal Rule of Civil Procedure ("Rule") 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3, 555–56, 570, 559–60 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555. However, the complaint must inform the defendant of the factual basis for the action to avoid dismissal. *Johnson v. City of Shelby, Miss.*, ___ U.S. ___, ___, 135 S. Ct. 346, 347 (2014) ("Petitioners stated simply, concisely, and directly events that, they alleged, entitled them to damages from the city. Having informed the city of

the factual basis for their complaint, they were required to do no more to stave off threshold dismissal for want of an adequate statement of their claim.").

## III. ANALYSIS

### A. Plaintiffs' § 1983 Claim

Title 42 U.S.C. § 1983 provides citizens of and persons under the jurisdiction of the United States a cause of action against '[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws. . . ." 42 U.S.C. § 1983. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). In analyzing Plaintiffs' § 1983 claim, the Court will consider Plaintiffs' allegations against Defendants in both their official and personal capacities.[3]

### 1. Pretrial Detainee's Constitutional Rights

Pretrial detainees look to the procedural and substantive due process guarantees of the Fourteenth Amendment for their "rights to basic needs such as medical care and safety." *Hare v. City of Corinth, Miss.*, 74 F.3d 633 (5th Cir. 1996) ("*Hare II*"). A pretrial detainee's right to medical care under the Fourteenth

_____

[3] A plaintiff may bring a claim under § 1983 against a person in his personal/individual or official capacity, or against a governmental entity. *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009). As noted by Defendants, O'Quin's Complaint does not specify whether the action is against Defendants in their official or personal capacities. (Doc. 15-1 at p. 8). Defendants provided arguments against O'Quin's allegations in both capacities. (Docs. 15, 32). As such, the Court will examine O'Quin's claims from both perspectives.

4

Amendment and the State's "affirmative duty" to provide such medical care is, and has long been, well and clearly established. *See e.g., id.*

There are two types of constitutional challenges that may be raised by pretrial detainees: attacks on a "condition of confinement" or attacks on an "episodic act or omission." *E.g., Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (citing *Hare II*, 74 F.3d at 644). Each legal theory has its own standard that must be met to demonstrate an underlying constitutional violation. *See Hare II*, 74 F.3d at 644. Plaintiffs' Complaint does not specify which type of claim he is pursuing, but the Fifth Circuit has allowed pretrial detainees to plead both legal theories regarding the same set of operative facts.[4] *See Edler v. Hockley Cnty. Comm'rs Court*, 589 F. App'x 664, 667–669 (5th Cir. 2014) (allowing a detainee to pursue a claim that the jail did not provide constitutionally adequate medical care to detainees on both a condition of confinement theory and an episodic act or omission theory) (unpublished, but persuasive).

### a. Condition of Confinement Claim

In a condition of confinement claim, a pretrial detainee challenges the jail's general conditions, practices, rules, or restrictions as unconstitutional. *Duvall v. Dall. Cnty., Tex.*, 631 F.3d 203, 207 (5th Cir. 2011). To prevail in a constitutional claim challenging a condition of confinement, the detainee must prove (1) a rule or restriction, or identifiable intended condition or practice, or a jail official's acts or omissions that were "'sufficiently extended or pervasive'" which was (2) not

---

[4] Additionally, the Supreme Court has held that Rule 8(a)(2) does not "countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson*, 135 S. Ct. at 346.

reasonably related to a legitimate government objective, and which (3) caused the violation of the detainee's constitutional rights. *Id.* (citing *Hare II*, 74 F.3d at 645); *see also id.* at 219 (affirming a district court's judgment in a condition of confinement action alleging inadequate medical care for a pretrial detainee who contracted a resistant bacterial infection in jail); *Shepherd v. Dall. Cnty.*, 591 F.3d 445, 458 (5th Cir. 2009) (affirming a district court's judgment in a condition of confinement action alleging inadequate medical care for a pretrial detainee who suffered a stroke in jail). In a condition of confinement claim based on inadequate medical care, "no single individual's error actually caused" the pretrial detainee's injury. *See Shepherd*, 591 F.3d at 453 n.2.

Plaintiffs allege a series of unresolved, systemic deficiencies sufficient for the Court to infer the existence of a *de facto* policy of failing to adequately treat pretrial detainees with mental illnesses. *See id.* at 453 ("From this evidence, the court could reasonable infer a *de facto* jail policy of failing properly to treat inmates with chronic illness."). Plaintiffs also allege "continuing serious deficiencies in policies, practices and procedures at the jail related to psychiatric care, the observation of prisoners with mental illness and the administration of psychotropic medication." (Doc. 6 at ¶ 57). In addition, the Complaint contends that "at no time did Sid Gautreaux, Dennis Grimes or Prison Medical Services have written policies on the administration of psychotropic medications." (Doc. 6 at ¶ 42). Plaintiffs further aver that Defendants failed to appropriately address these deficiencies in policies, practices, and procedures, despite having knowledge of them. (Doc. 6 at ¶ 59).

Plaintiffs also provide examples of legitimate governmental objectives that are thwarted by the Defendants' failure to establish and implement an appropriate policy regarding the treatment of mentally ill detainees at the jail, such as the maintenance of a safe environment for prisoners, the effective operation of the criminal justice system, and rehabilitation. Indeed, Plaintiffs assert that the lack of appropriate mental health treatment at East Baton Rouge Parish Prison actually renders incarceration in the facility "dangerous to the detainees." (Doc. 6 at ¶ 50). Plaintiffs further reason that the lack of proper medical care at the prison allows prisoners with significant mental illnesses to disintegrate to the point of often permanent "destabilization[]," where such a prisoner is "often unable to communicate with the lawyers, friends, and prison staff as effectively as those without mental illness . . . depriving the individual of much more than his or her chance to mount a defense in court." (Doc. 6 a ¶¶ 51, 52). Plaintiffs also argue that inadequate treatment of prisoners with serious mental illnesses "is very likely to cause a deterioration of their psychological well-being and mental capacity to the point that rehabilitation becomes impossible." (Doc. 6 at ¶ 53). Therefore, the Complaint plausibly states that Gautreax's and Grimes' *de facto* policy of failing to adequately treat pretrial detainees with mental illnesses is not reasonably related to a legitimate government objective.[5]

---

[5] Defendants submit that if the Court were to determine that restraining David O'Quin in his cell was a condition of confinement claim, it would be validated by a "legitimate government interest of effectively managing the jail." (Doc. 15-1 at p. 17). However, Defendants do not adequately identify any legitimate government interest for Gautreaux's and Grimes' *de facto* policy of not providing adequate medical care for detainee's with mental illnesses.

Lastly, Plaintiffs properly allege a constitutional injury caused to the detainee by Defendants that is sufficient to support a condition of confinement claim. Plaintiffs assert that Defendants failed to ensure that O'Quin received necessary psychiatric care while detained, despite having knowledge of the needs and requirements of the incarcerated mentally ill. (Doc. 6 at ¶ 40). The Complaint additionally states that O'Quin's constitutional rights were violated and he "endured and suffered severe physical and emotional distress" as a result of Defendants' "actions and inactions." (Doc. 6 at ¶ 65). Additional support for Plaintiffs' claim can reasonably be expected to be borne out in discovery.

b. *Episodic Act or Omission Claim and Defendants' Assertion of Qualified Immunity*

In an episodic act or omission claim, a detainee challenges a particular act or omission by one or more officials that causes the "actual harm," then identifies a policy, custom, or rule (or lack thereof) of the municipality that allowed or caused the act or omission. *Scott*, 114 F.3d at 53. In these cases, "an actor usually is interposed between the detainee and the municipality . . . ." *Id.* As such, the issue in an episodic act or omission case is "whether that official breached his constitutional duty to tend to the basic human needs of persons in his charge." *Hare II*, 74 F.3d at 645. The individual actor interposed between the harm alleged by the pretrial detainee and the municipality can assert a qualified immunity defense when sued in a personal capacity. *See Hare v. City of Corinth, Miss.*, 135 F.3d 320, 327 (5th Cir. 1998) ("*Hare III*") (explaining the interaction between

qualified immunity's objective reasonableness standard and the subjective standard for deliberate indifference in an episodic action or omission case).

A qualified immunity analysis begins with an inquiry into "whether, taken in the light most favorable to the plaintiffs, the facts alleged show that the officer's conduct violated a constitutional right." *Gates v. Tex. Dep't of Protective and Regulatory Servs.*, 537 F.3d 404, 418 (5th Cir. 2008). Public officials are entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated an actual constitutional or federal statutory right that is clearly established under existing law and (2) if so, the defendant's conduct was objectively unreasonable in light of clearly established law at the time of that conduct. *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir 2011); *Hart v. Tex. Dep't of Criminal Justice*, 106 F. App'x 244, 248 (5th Cir. 2004) (unpublished, but persuasive).

Plaintiffs sufficiently aver that Defendants did not adequately provide for O'Quin's medical needs, which caused O'Quin's "actual harms" of injury and death. The factual matter presented in the Complaint also sufficiently states claims of supervisory liability for failure to promulgate a policy and failure to train. Further, and as previously discussed, Plaintiffs also effectively allege that Defendants' *de facto* policy of failing to adequately treat pretrial detainees with mental illnesses allowed the acts complained of.

Plaintiffs allege that from the time of O'Quin's entry into the jail, his "behavior was erratic and bizarre" enough that he was restrained in a chair with metal handcuffs and shackles on his ankles and wrists, left "screaming and

writing and spitting" in his own waste, for up to twenty-four hours at a time. (Doc. 6 at ¶¶ 18, 22). Taking the allegations in the Complaint as true, "O'Quin's condition became severely compromised and he devolved into florid psychosis," to the point where he could not meaningfully communicate with jail staff. (Doc. 6 at ¶ 34). Once he was released from his chair restraints, he had "multiple lacerations and bruising." (Doc. 6 at ¶ 41). O'Quin's abnormal behavior and physical wounds, and his need for their treatment, would have been obvious to any non-medical prison official. Plaintiffs state defendants Barrick's and Shumate's personal involvement in that they allege the two defendants "recklessly disregarded the health condition of David O'Quin and left him suffering from life threatening health conditions . . . to die in his cell." (Doc. 6 at ¶ 35).

Even under the Defendants' cited precedent, the Plaintiffs' alleged facts detailing defendants Barrick's and Shumate's purported failure to summon immediate medical attention for  O'Quin could fairly be characterized as their personally failing to adequately provide for his medical needs. Defendants cite a Third Circuit case for the proposition that a prison's natural division of labor requires that "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); (Doc. 15-1 at p. 12). Although not binding on this Court, *Spruill* is persuasive in that it actually supports Plaintiffs' contention that by pleading facts that demonstrate that O'Quin's "condition was so dire and obvious that [a non-medical prison official's]

10

failure to summon immediate medical attention . . . amounted to deliberate indifference," Plaintiffs have satisfied the plausibility requirements of the motion-to-dismiss stage. *Cf. Spruill*, 372 F.3d at 237 (concluding that the non-medical prison official was not deliberately indifferent because the inmate alleged that his condition was so "dire and obvious" that the non-medical prison official's intervention in the prison's regular sick call process was indicated.).

Regarding the failure to train claim, the imposition of liability on a supervisor requires an underlying constitutional violation. *Tamez v. Manthey*, 589 F.3d 764, 772 (5th Cir. 2009). "Supervisory officials cannot be held liable under section 1983 for the actions of subordinates . . . on any theory of vicarious or *respondeat superior* liability." *Estate of Davis ex rel McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). A supervisory official may also be held liable "if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter*, 659 F.3d at 446. In addition, either a failure to adopt a policy or a failure to train or supervise may be the basis of supervisor liability if the defendant is shown to have acted with deliberate indifference. *Id.*

Supervisory liability for failure to supervise or train may attach if "(1) the supervisor either failed to supervised or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Porter*, 659 F.3d at 446 (quoting *Goodman*, 571 F.3d at 395). A

plaintiff ordinarily must show "'a pattern of similar constitutional violations by untrained employees' . . . to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, ___ U.S. ___, ___, 131 S. Ct. 1350, 1360.

Plaintiffs expressly state that Gautreaux's and Grimes' staffs are not "well-trained" or well-supervised (Doc. 6 at ¶¶ 30, 31). In addition, Plaintiffs cite a "fail[ure] to train employees on how to recognize severe mental illness." (Doc. 6 at ¶ 79). These allegations are sufficient to warrant the additional discovery necessary to discern any pattern of similar constitutional violations and the extent to which any possible failures in training may have been responsible.

Plaintiffs' supervisory liability claim for failure to promulgate based on the alleged underlying Fourteenth Amendment violations by Defendants was also properly pleaded. Such an omission by a municipal policymaker can be the basis for § 1983 liability only if it is an intentional choice, "not merely an unintentionally negligent oversight." *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992). "A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Porter*, 659 F.3d at 446 (quoting *Rhyne*, 973 F.2d at 392). To establish deliberate indifference, Gautreaux and Grimes must have had "'actual or constructive notice'" that a particular omission in policy "'causes . . . employees to violate citizens' constitutional rights'" and still have chosen to omit that policy. *See Porter*, 659 F.3d at 447 (citing *Connick*, 131 S. Ct. at 1360).

Plaintiffs allege that Gautreaux and Grimes knew of the consequences of not adopting policies regarding the treatment of mentally ill detainees and still refused to act. (Doc. 6 at ¶¶ 42, 59). Plaintiffs claim that Gautreaux and Grimes knew of this need, but refused to promulgate written policies to address it. (Doc. 6 at ¶ 42). As the Court must take the allegations of the Complaint as true and consider the allegations in the light most favorable to the plaintiff, such an allegation of a knowing omission by a municipal policymaker can only be seen as a sufficient basis for additional discovery.

Equally well established is the premise that, unlike convicted inmates, the Fourteenth Amendment prohibits State punishment of a pretrial detainee.[6] *Hare II*, 74 F.3d at 639; *see also Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."); *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 474 (5th Cir. 1996) ("Specifically, 'while a sentenced inmate may be punished in any fashion not cruel and unusual, the due process clause *forbids punishment* of a person held in custody awaiting trial but not yet adjudged guilty of any crime.'"). Not every condition or restriction of detention imposed upon a detainee during pretrial detention is considered a "punishment" under the Constitution. *Bell*, 441 U.S. at 537. Further, the Supreme Court has recognized that "the effective management of the detention facility once the individual is

---

[6] Plaintiffs do not specifically reference unconstitutional punishment as a claim in the Complaint. However, Plaintiffs specifically reference Defendants' "deliberate[] indifferen[ce] to O'Quin's Fourteenth Amendment rights" (Doc. 6. at ¶ 64), and allege facts sufficient to support a review of the Complaint's assertions on this theory.

confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment." *Id.* at 540. Even "discomforting" restraints that are reasonably related to a jail's interest in maintaining security are not, without more, unconstitutional punishment. *Id.* However, a court may infer that if a restriction or condition is "arbitrary or purposeless," the restriction appears "excessive" given the purpose--other than punishment--assigned to it, and the restriction is not reasonably related to a legitimate governmental goal, the restriction "is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id.* at 538–39. The Constitution precludes "unnecessary random violence or suffering" and "denial of *basic* human needs. *Hare II*, 74 F.3d at 649. A jail official who is aware of the risk of serious injury to a pretrial detainee and who responds or fails to respond in a deliberately indifferent manner violates the Constitution. *See Id.* at 650.

Defendants argue that Plaintiffs have failed to state a claim of relief against LaMotte and Grant as a matter of law because the factual matter provided in the Complaint does not support a claim against them for failing to provide O'Quin with adequate medical and psychiatric attention. (Doc. 15-1 at p. 26). However, Plaintiffs have provided an adqate factual basis to support an assertion that defendants LaMotte and Grant unconstitutionally punished O'Quin. According to the Complaint, "O'Quin was left restrained in a chair, largely unmedicated, dehydrated, beaten and abused by prison guards until his death . . . ." (Doc. 6 at ¶

33). Plaintiff specifically allege that defendants Lamotte and Grant physically attacked a nude, unarmed O'Quin in his cell with taser shields and mace because O'Quin was spitting on trustees. (Doc. 6 at ¶ 25).

Although the Court is sensitive to Defendants' interest in effectively managing the jail and that such management is a legitimate governmental objective (Doc. 15-1 at p. 17), Plaintiffs' Complaint sufficiently alleges conduct on a level that does not seem to be reasonably related to managing the jail and could plausibly be considered excessive. Plaintiffs' account indicates that O'Quin was subjected to "unnecessary random violence or suffering" and "denial of *basic* human needs," that defendants LaMotte and Grant were personally involved. Such factual matter supports the allegation that LaMotte and Grant unconstitutionally punished O'Quin in violation of his Fourteenth Amendment rights. *See Hare II*, 74 F.3d at 649.

The Fifth Circuit maintains a heightened pleading requirement in § 1983 actions that require allegations of individual liability and implicate a qualified immunity defense, but does not require that the plaintiff "anticipate the [qualified immunity] defense in his complaint at the risk of dismissal under Rule 12." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004) (quoting *Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir.1995)) (en banc). As such, Defendants' observation that Plaintiffs have insufficiently negated Defendants' assertion of qualified immunity, (Doc. 15-1 at p. 9), is not a basis to dismiss the Complaint at this time. Should discovery yield additional facts that support claims against Defendants in their

individual capacities, Defendants may raise a defense of qualified immunity at that time.

### 2. Official Capacity Claims Against Defendants Gautreaux and Grimes

The Supreme Court held in *Monell* that a local government entity may be held liable under § 1983 when the allegedly unconstitutional action implements or executes a government policy or custom and inflicts the injury. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690, 694 (1978). The *Monell* test requires a showing that the "violation resulted from a custom or policy maintained by the *municipality* with *objective* deliberate indifference." *Duvall*, 631 F.3d at 210. As an action against a public official is "only another way of pleading an action against an entity of which an officer is an agent," the Court must apply *Monell's* objective deliberate indifference test to any allegations against Gautreaux and Grimes in their official capacities, as such claims are considered to be claims against the municipality. *See Graham*, 473 U.S. at 165.

As previously discussed, Plaintiffs sufficiently pleaded both the failure to train claim and the failure to promulgate claim against Defendants. Both claims are sufficient to allege "customs" under *Monell* and allow for discovery regarding the municipal liability. *See Canton*, 489 U.S. at 392 (holding that a municipality can be held liable for a failure to train if the failure "reflects deliberate indifference to the constitutional rights of its inhabitants.").

## B. Plaintiffs' Americans With Disabilities Act Claim

The Court must decide is whether Plaintiffs have sufficiently alleged that Defendants intentionally discriminated against O'Quin because of his mental illness, in violation of the ADA. Plaintiffs claim that O'Quin was denied access to all jail services—including communication, medical care, mental health care, and the administrative remedy procedure—because he had a mental illness. (Doc. 6 at ¶ 36). Plaintiffs further allege that despite their knowledge of his mental illness, Defendants failed to provide O'Quin with reasonable accommodations that would allow him to receive necessary treatment and services. (Doc. 6 at ¶ 62).

### 1. ADA Claims Pleaded Against Gautreaux and Grimes In Their Official Capacities

To recover compensatory damages under the ADA, a plaintiff must prove both intentional discrimination and physical injury. *Edler*, 589 F. App'x at 671–72. Plaintiffs do not specify whether he levies the ADA claims against Defendants in their official or personal capacities. The Court therefore reviews the claims as though they were alleged against only defendants Gautreaux and Grimes in their official capacities because the ADA allows suits against public entities on a theory of vicarious liability, but does not allow actions against officials in their personal capacities. *See* 42 U.S.C. § 12131(1) (allowing actions against state and local governments, their instrumentalities, and other defined public entities); *see also Joseph v. Port of New Orleans*, No. CIV. A. 99-1622, 2002 WL 342424, at *10 (E.D. La. Mar. 4, 2002) *aff'd sub nom. Joseph v. Bd. of Comm'rs of the Port of New Orleans*, 55 F. App'x 717 (5th Cir. 2002) ("The majority of courts that have

17

addressed the issue have held that the ADA does not permit claims against persons in their individual capacities."). The ADA does not require that a plaintiff identify a policymaker or official policy to impose liability upon a public entity, but will hold the public entity "liable for the vicarious acts of any of its employees." *Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 574–75 (5th Cir. 2002) (adopting the holdings of the Fourth, Seventh, Ninth, and Eleventh Circuits).

### 2. Establishing Discrimination Under the ADA

The Fifth Circuit has articulated a three-prong test to establish a prima facie case of discrimination under the ADA. *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004). "A plaintiff must demonstrate: (1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability." *Melton*, 391 F.3d at 671–72.

### a. *Qualified Individual With A Disability*

Plaintiffs sufficiently allege that O'Quin was a qualified individual with a disability within the meaning of the ADA. The Supreme Court has held that Title II's statutory definition of a "qualified person with a disability" includes "prisoners who are being held against their will." *Pa. Dep't of Corrs. V. Yeskey*, 524 U.S. 206, 211 (1998). Plaintiffs clearly aver that O'Quin was a qualified individual with a disability. (Doc. 6 at ¶ 66). The Complaint cites the substantial limits his mental

impairments imposed upon his major life activities, his record of having a disability, that he was regarded as having a disability, and that Defendants "were in a position to know of O'Quin's disability." (Doc. 6 at ¶ 66). In addition, Plaintiffs state that O'Quin was "qualified to participate in the everyday programs" offered at the jail, including showers, telephone privileges, and medical care. (Doc. 6 at ¶ 68). Plaintiffs have set forth sufficient factual matter to satisfy the first prong of the *Melton* test.

### b.    *Denial of Services*

Plaintiffs have also set forth sufficient facts to support a claim that O'Quin was excluded from participation in, and denied the benefits of, services, programs, or activities for which the jail is responsible, satisfying the second prong of the *Melton* test for establishing a prima facie case of disability discrimination under the ADA. Prison programs fall within the scope of Title II, and Title II requires that prisons make reasonable accommodations or modifications for prisoners with disabilities. *Garrett v. Thaler*, 560 F. App'x 375, 382 (5th Cir. 2014) ("Title II imposes an obligation on public entities to make reasonable accommodations or modifications for disabled persons, including prisoners.") (unpublished, but persuasive). The Supreme Court has stated that "it is quite plausible that the alleged deliberate refusal of prison officials to accommodate [a prisoner's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs constitute[s] "exclu[sion] from participation in or ... deni[al of] the benefits of" the prison's "services, programs, or activities." *United*

*States v. Georgia*, 546 U.S. 151, 157 (2006). As noted, Plaintiffs aver that O'Quin was restrained in a chair with metal handcuffs to his ankles and wrists (Doc. 6 at ¶ 22), and excluded from "participation in the everyday activities and programs afforded other prisoners, including but not limited to access to showers, telephone privileges, and medical care" (Doc. 7 at ¶ 73). This is exactly the type of denial of services, programs, and activities that the Supreme Court addressed. As such, Plaintiffs have alleged sufficient factual matter to satisfy the second prong of the *Melton* test.

c.    *"By Reason Of [His] Disability"*

In the context of the motion to dismiss standard, Plaintiffs have satisfied the third prong of the *Melton* test, which requires Plaintiffs to allege facts sufficient to demonstrate that it is plausible that such exclusion, denial of benefits, or discrimination was by reason of O'Quin's disability. In 2008, the Fifth Circuit concluded that, unlike Section 504 of the Rehabilitation Act, Title II's "by reason of" language required only a "motivating factor" test for causation. *Pinkerton v. Spellings*, 529 F.3d 513, 517–19 & n.25 (5th Cir. 2008). Under the "motivating factor" test, discrimination "must actually play a role in the employer's decision making process and have a determinative influence on the outcome," but does not have to be the sole reason supporting the decision. *Pinkerton,* 529 F.3d at 519 (describing the "motivating factor" test in a disability discrimination action under the Rehabilitation Act against a government entity).

This standard mirrors the facts that Plaintiffs set forth in the Complaint. Specifically, Plaintiff William O'Quin notified the jail of his son's mental illness and history five days after O'Quin's arrest. (Doc. 6 at ¶ 23). Plaintiffs admit that from the time O'Quin entered the jail, his behavior was "erratic and bizarre." (Doc. 6 at ¶¶ 17, 18). However, Plaintiffs also explain that the behavior was "associated with his mental illness and the lack of treatment . . . ." (Doc. 6 at ¶ 44). Plaintiffs further allege that O'Quin's behavior was the reason he was "avoided by jail staff" that could have tended to his injuries, and that he was "singled out due to his disability, ridiculed, shackled, tased, maced, beaten and left for dead based upon his disability." (Doc. 6 at ¶¶ 44, 63). As such, Plaintiffs have satisfied the third prong of the *Melton* test.

Taking the allegations of the Complaint as true for the purposes of deciding the motion, the factual matter Plaintiffs provide is sufficient to form a prima facie case of disability discrimination under the ADA against O'Quin by Defendants Gautreaux and Grimes in their official capacities.

### C.    Plaintiffs' State Tort Claims

The Court must also decide whether Plaintiffs have sufficiently alleged that Defendants negligently breached their duties to O'Quin in (1) failing to arrange for his examination and treatment by mental health staff, (2) failing to provide him with the appropriate medication necessary to "alleviate or minimize" the symptoms of his mental illness, and (3) failing to implement adequate procedures to prevent

his physical harm and facilitate timely and adequate treatment of any harms. (Doc. 6 at ¶ 78).

Louisiana courts employ a duty-risk analysis to determine whether liability exists on the part of a public body. *McGuire v. New Orleans City Park Improvement Ass'n*, 2002-1401, p. 6 (La. 1/14/03); 835 So.2d 416, 420. A defendant may be found liable only if the plaintiff proves all four of the following elements: (1) that "the conduct in question was a cause-in-fact of the resulting harm"; (2) that "the defendant owed a duty of care to the plaintiff"; (3) that "the defendant breached that requisite duty"; and (4) that "the risk of harm was within the scope of protection afforded by the duty breached." *Id.*, 2002-1401, p. 6–7, 835 So.2d at 421. Whether the defendant owed a duty is a question of law, specifically "whether the plaintiff has any law, statutory or jurisprudential, to support his claim." *Lazard v. Foti*, 2002-2888, p. 3–4 (La. 10/21/03); 859 So.2d 656, 659.

### 1. Defendants' Alleged Failure to Arrange for O'Quin's Examination and Treatment by Mental Health Staff

Plaintiffs' claim that Defendants failed to arrange for O'Quin's examination by mental health staff is supported by the allegations of the Complaint. O'Quin states in the Complaint that during O'Quin's stay in the prison, his "serious physchosis" [sic] and suitability for referral to a doctor were noted by a medical nurse (Doc. 6 at ¶ 20), and he was examined on two separate occasions by two different medical doctors (Doc. 6 at ¶¶ 29, 33). However, the Court requires additional briefing regarding the extent to which these medical staff members

provided appropriate treatment for O'Quin's physical and mental conditions, and Defendants' roles in the provision–or lack thereof–of such care.

**2.      Defendants' Failure to Provide O'Quin with the Appropriate Medication Necessary to "Alleviate or Minimize" the Symptoms of His Mental Illness**

The factual support for Plaintiffs' claim that Defendants failed to provide O'Quin with appropriate medication to treat his symptoms of his mental illness is unclear. Plaintiffs implies in his Complaint that Defendants failed by "giv[ing] [O'Quin] the choice of whether to take the medication or not." (Doc. 6 at ¶ 22); *see also* (Doc. 24-1 at p. 10) (arguing that the Louisiana statute allowing treatment of a mentally ill inmate who refuses treatment to be treated under certain circumstances applies here). If an inmate with a mental illness refuses treatment, Louisiana Revised Statute 15:830.1 permits the institution to treat the inmate for up to fifteen days at an appropriate treatment facility, provided that the institution's staff physician, staff psychiatrist, or consulting psychiatrist "certifies that the treatment is necessary to prevent harm or injury to the inmate or to others." La. R.S. 15:830.1.

As the Court considers this allegation in the light most favorable to Plaintiffs, the plain language of the statute presents jail officials with an option. The Court requires additional information regarding any affirmative duty the statute may place upon Defendants to medicate a noncompliant prisoner.

### 3. Defendants' Failure to Implement Adequate Procedures to Prevent O'Quin's Physical Harm and Facilitate Timely and Adequate Treatment of Any Harms

Plaintiffs maintain that defendants Gautreaux and Grimes "failed to have in place adequate procedures for the handling of mentally ill patients" (Doc. 6 at ¶¶ 30, 31), and that they had not established written policies on the administration of psychotropic medications (Doc. 6 at¶ 42).

Officers, officials, and employees of any of Louisiana's political subdivisions are, under certain circumstances, statutorily entitled to immunity from liability "based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts." La. R.S. 9:2798.1; *cf. Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 692 (5th Cir. 2002) (characterizing a parish as a "political subdivision"). When a defendant invokes this discretionary function immunity as an affirmative defense, a court must initially determine whether the governmental agency had a choice or discretion regarding whether to follow a particular course of action. *Johnson v. Orleans Parish Sch. Bd.*, 2006-1223, p. 14 (La. App. 4 Cir. 1/30/08); 975 So.2d 698, 709. If a statute, regulation, or policy dictated the governmental agency's action, then immunity does not apply. *Id.*, 2006-1223, p. 14, 975 So.2d at 709–10. However, if there was no proscribed duty, the defendant must then introduce evidence at trial that the choice was "grounded in 'social, economic, or political policy.'" *Id.*, 2006-1223, p. 14–15, 975 So.2d at 710 (quoting *Simeon v. Doe*, 618 So.2d 848, 852–53 (La. 1993)); *see also Lambert v. Riverboat Gaming Enforcement Div.*, 96-1856, p. 9–10 (La. App. 1 Cir 12/29/97); 706

So.2d 172, 177–78 ("[E]ven if certain of the alleged acts of misconduct . . . are discretionary acts and decisions as claimed by the defendants, we are unable to determine through the exception of no cause action whether the defense will apply herein. Even where discretion is involved, the court must determine whether the discretionary act is the kind which is 'grounded in social, economic or political policy,' a question of fact to be determined through a trial.").

Discretionary function immunity is not available to Gautreaux and Grimes as an affirmative defense at the motion to dismiss stage. Defendants cite *Smith* for the proposition that liability cannot be imposed upon a government entity for its decision not to implement certain procedures as part of its internal policies. (Doc. 15-1 at p. 32); *see also Smith v. Lafayette Parish Sheriff's Dep't*, 2003-517, p. 7 (La. App. 3 Cir. 4/21/04); 874 So.2d 863, 868 (holding that the Sheriff's hiring and retention policy was a discretionary act that his police department cannot be held liable for applying). In *Smith*, Louisiana's Third Circuit Court of Appeal affirmed the trial court's grant of summary judgment in favor of the defendants. *Id.*, 2003-517, p. 1, 874 So.2d at 865. However, a court will grant a summary judgment motion if "there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law." *Id.*, 2003-517, p. 2–3, 874 So.2d at 865; *see also Rader v. Cowart*, 543 F. App'x 358, 361 (5th Cir. 2013) ("Whereas a motion to dismiss challenges a complaint's legal sufficiency, a post-discovery motion for summary judgment evaluates whether a genuine issue of material fact remains after considering both sides' proffered evidence.") (unpublished, but persuasive). A court

deciding a motion to dismiss considers solely whether the factual matter in a complaint sufficiently supports the plaintiff's claims, not whether there is a dispute concerning material facts. *See id.*, 543 F. App'x at 361. It is appropriate for a court to grant a party discretionary function immunity if it decides on a summary judgment motion that there is no dispute concerning a matter of fact such as whether a government official's decision was "grounded in 'social, economic, or political policy.'" As stated in *Johnson* and *Lambert,* it is not appropriate for a court to do so at the motion to dismiss stage.

## IV.   CONCLUSION

Based on the above analysis, the Court concludes that Defendants are not entitled to a dismissal of this action for failure to state a claim.

Accordingly,

**IT IS ORDERED** that the **Motion to Dismiss (Doc. 15)** is **DENIED WITHOUT PREJUDICE** to reassert qualified immunity entitlement at a later stage in the proceedings.

Baton Rouge, Louisiana, this ____31ˢᵗ____ day of March, 2015.

_____
**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**